IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW DENNIS,

                Plaintiff,

v.                                                   ORDER

KURT PICKNELL, WALWORTH COUNTY,         15-cv-275-jdp
and MICHAEL DITTMAN,

                Defendants.

---

      Plaintiff Matthew Dennis, a prisoner in the custody of the Wisconsin Department of Corrections currently housed at the Jackson Correctional Institution, brings Eighth Amendment and state law negligence claims that officials from the DOC and from Walworth County failed to protect him from harm while he was temporarily housed at the Walworth County Jail. The parties have filed several motions that I will address in this order, chief among them defendant Michael Dittman's motion to dismiss plaintiff's claims against him, and defendants Kurt Picknell and Walworth County's motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies. I will grant both of these motions, leaving only plaintiff's state law negligence claim against Picknell, which I will dismiss without prejudice.

**A. Motion for provision of legal loan funds or use of release account**

      Plaintiff has filed a motion asking for a court order granting him a legal loan or use of his release account funds. Dkt. 18. He says that after losing his prison job, he has no income and thus no way to pay for postage or supplies. Defendant Dittman counters that plaintiff has not even applied for a legal loan. But regardless of plaintiff's legal loan status, it is generally this court's policy to not interfere with the state's legal loan program, and only in

rare cases does the court take up the issue of a plaintiff using release account funds. In an extreme circumstance, the court might intervene to ensure that an incarcerated plaintiff has adequate postage and writing materials to access the court. But based on the various materials plaintiff has filed, there is nothing to suggest that plaintiff has had insufficient resources to litigate this case. Accordingly, I will deny this motion, without prejudice to plaintiff renewing it if circumstances change.

B.  Motion for assistance in recruiting counsel

Plaintiff has filed a motion for the court's assistance in recruiting him counsel. Dkt. 21. To show that it is appropriate for the court to recruit counsel, plaintiff must first show that he has made reasonable efforts to locate an attorney on his own. *See Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992) ("the district judge must first determine if the indigent has made reasonable efforts to retain counsel and was unsuccessful or that the indigent was effectively precluded from making such efforts"). To meet this threshold requirement, this court generally requires plaintiffs to submit correspondence from at least three attorneys to whom they have written and who have refused to take the case. Plaintiff does not explain whether he has attempted to find outside counsel, which is reason enough to deny his motion.

Even if plaintiff had shown that he made reasonable efforts to find counsel, I would deny his motion because he has not met the second requirement for assistance in recruiting counsel: demonstrating that his case is one of those relatively few in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). As discussed below, I will dismiss this case because plaintiff cannot bring colorable claims against defendant Dittman, he failed to

2

comply with Wisconsin's notice-of-claim laws, and he failed to exhaust his administrative remedies. These are not defects that recruitment of counsel could have fixed at this point in the proceedings. Therefore, I will deny his motion for recruitment of counsel.

### C. Defendant Dittman's motion to dismiss

Defendant Michael Dittman, the warden of the Columbia Correctional Institution (where plaintiff was housed when he filed the complaint), has filed a motion to dismiss plaintiff's claims against him. In screening the complaint, I characterized plaintiff's claims against Dittman as follows:

> As for defendant Dittman, he oversees a separate DOC prison; it is not clear why plaintiff believes that Dittman should be held responsible for the policies at the Walworth County Jail. He cannot be held liable for failing to protect him from the attack itself because there is no indication that he was aware of the danger facing plaintiff before the attack. But plaintiff also alleges that Dittman denied his grievance *after* the attack, which suggests that Dittman turned a blind eye to the danger facing plaintiff following the attack. At this point I can reasonably assume that Dittman could have forced a transfer or taken other action in response to the danger made clear by the attack, so I will allow plaintiff to proceed on an Eighth Amendment claim against Dittman as well.

Dkt. 7, at 4 (emphasis in original).

Defendant Dittman contends that plaintiff cannot maintain an Eighth Amendment failure to protect claim against him because plaintiff's allegations suggest only negligence, he was not personally involved in the harm befalling plaintiff, he cannot be held responsible for events occurring at a county jail, and the denial of plaintiff's grievance is not enough to state a constitutional claim. I will grant defendant Dittman's motion to dismiss plaintiff's Eighth Amendment claim, but for a slightly different reason than those articulated by Dittman in his brief.

As discussed above, plaintiff's claim is not that Dittman should be responsible for the *completed* attack against him. I allowed him to proceed on a claim that Dittman turned a blind eye to the danger facing plaintiff *after* he was made aware of the danger by reviewing plaintiff's grievance. At the screening (or motion to dismiss) stage, I could not rule out a claim against Dittman based on the fact that the danger to plaintiff was at a different facility than the one Dittman ran, or on the fact that Dittman found out about the danger through a grievance; there is a reasonable inference from plaintiff's allegations that Dittman might have been able to exercise control over plaintiff's short-term assignment at the county jail.

Nonetheless, plaintiff's inability to bring a claim against Dittman for the actual assault he suffered leaves only the future danger he faced at the jail. Plaintiff's allegations do not suggest that once Dittman because aware of the danger facing plaintiff, the danger ever materialized again before plaintiff was transferred back to state custody. So by the time plaintiff filed his complaint in this court, he had not suffered harm as a result of Dittman's failure to take any action on plaintiff's grievance. Nor was this a situation in which plaintiff faced impending danger at his current facility. All plaintiff says is that he faced the threat of possible danger after the first attack. But plaintiff cannot maintain a claim for "failure to prevent exposure to risk of harm" rather than a claim for "failure to prevent harm." *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996) (internal quotation marks omitted). Accordingly, I will dismiss plaintiff's Eighth Amendment claim against Dittman.

This same reasoning dooms plaintiff's Wisconsin-law negligence claim. But the negligence claim fails for another reason raised by Dittman: plaintiff fails to meet the notice-of-claim requirement for bringing such a claim, set forth in Wis. Stat. Section 893.82(3):

> Except as provided in sub. (5m), no civil action or civil proceeding may be brought against any state officer, employee

4

> or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employee's or agent's duties . . . unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employee or agent involved.

Plaintiff does not even address the notice-of-claim argument in his response, and there is nothing in the record indicating that plaintiff has complied with the notice-of-claim statute. Accordingly, I will grant Dittman's motion to dismiss plaintiff's negligence claim against him. Because I am dismissing all of plaintiff's claims against Dittman, I will deny as moot the following other motions filed by Dittman: a motion to stay discovery, Dkt. 40, and a motion for summary judgment, Dkt. 62.

### D. County defendants' motion for partial summary judgment

The remaining defendants, Walworth County and Sheriff Kurt Picknell, have filed a motion for summary judgment on plaintiff's Eighth Amendment claims against them, based on plaintiff's failure to exhaust his administrative remedies.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The administrative exhaustion requirement is mandatory, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), and "applies to all inmate suits," *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Its purpose is not to protect defendants but to give prison officials an opportunity to resolve complaints without judicial intervention. *Perez v. Wis. Dep't of Corr.*,

182 F.3d 532, 537-38 (7th Cir. 1999) (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation").

Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require," *Pozo*, 286 F.3d at 1025. However, "[i]f administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Plaintiff filed his grievance after he was back at CCI. He wrote to jail officials asking for a complaint form. They sent him a "citizen complaint" form, which plaintiff filled out. Plaintiff's signature is dated April 15, 2015. Jail officials marked it received on April 23, 2015. Undersheriff Kevin Williams wrote to plaintiff responding to his grievance in a letter dated May 11, 2015. Williams concluded that "this complaint is not substantiated . . . and [plaintiff's] placement was consistent with [jail] operating procedures." Dkt. 44-3, at 1. But before plaintiff received this response, he filed his civil complaint in this court (the complaint is dated May 1, 2015, is postmarked May 9, and was received on May 11). Defendants contend that plaintiff failed to exhaust his administrative remedies because he filed his complaint before completing the administrative process. A prisoner plaintiff jumping the gun in this way usually results in dismissal. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) ("Section 1997e(a) says that exhaustion must precede litigation.").

6

But plaintiff contends that the administrative process was not truly "available" to him because jail officials jumbled the "inmate" and "citizen" administrative complaint rules and did not respond to him in a timely fashion. Defendants submit two versions of their rules for administrative complaints, one set for jail inmates, and another set for other citizens. Plaintiff notes that the county sent him a "citizen" complaint form, rather than the "inmate" complaint form.

"Prison officials may not take unfair advantage of the exhaustion requirement, . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). If I thought that jail officials whipsawed plaintiff by applying conflicting parallel sets of grievance rules to disadvantage him, I would likely deny a motion for summary judgment based on exhaustion. *See Naseer v. Belz*, No. 13-cv-821-jdp, 2015 WL 519760, at *2 (W.D. Wis. Feb. 9, 2015) (denying summary judgment to prison officials unable to explain why failure to exhaust under one grievance system was dispositive, where grievance was routed though separate grievance mechanism).

But that is not the case here. Defendants say that they sent plaintiff the citizen form because he was no longer a jail inmate at the time he filed his complaint. Defendants' decision about which form to use is not inherently unreasonable. And regardless which form was used, plaintiff was given the opportunity to state how he was wronged by jail staff.

Regardless what set of rules should apply to plaintiff, he filed his civil complaint too quickly. The Walworth County Jail's inmate grievance procedure states that a complaint should be answered "immediately" by the housing officer "working in [the inmate's] assigned area," or, if the officer cannot answer, the complaint is given to "the proper authority," who

7

should answer "in a timely manner." Dkt. 44-1, at 1. The citizen complaint procedure does not include a set deadline for response by prison official, but does say that the person investigating the complaint shall "[m]ake every effort to investigate the complaint promptly and complete the investigation as soon as reasonably possible." *Id*. at 6. Plaintiff argues that defendants did not respond "in a timely manner" and so he should be excused filing his complaint before he received a response. The Walworth County rules unfortunately do not give complainants clear expectations about when to expect a response. I might agree with plaintiff in a situation in which jail officials sat on a grievance for an extended period of time, leaving the complainant in limbo. But no reasonable observer would conclude that is what happened here.

Plaintiff received his response less than a month after he submitted his complaint. Plaintiff filed his civil complaint even before a month was up. This is well within the time courts of this circuit have concluded is too quick for an inmate to run to the court before receiving a grievance response. *Ford*, 362 F.3d at 400 (inmate "had to stick with [grievance] process until its conclusion rather than make a beeline for court just because the administrative officials gave his appeal [more than the 60 days usually given for a decision on a grievance appeal]."; *see also Mlaska v. Shah*, 428 F. App'x 642, 645 (7th Cir. 2011) ("Even though the warden was required to respond within two months, a prisoner litigant cannot 'make a beeline for court' the moment this deadline passes." (quoting *Ford*, 362 F.3d at 400); *Holtz v. Martin*, No. 14-CV-0367-NJR-DGW, 2015 WL 1929950, at *5 (S.D. Ill. Apr. 28, 2015) (*adopting rep. and rec.*) ("Although the Court need not determine how long is sufficient for an inmate to wait for a response before filing suit, the Court is convinced that two months and a mere four days is not sufficient."). Because plaintiff filed this lawsuit before

completing the administrative grievance process, I will grant defendants Walworth County and Picknell's motion for summary judgment on exhaustion grounds.

E.  **Remaining claim**

The final claim remaining in this case is plaintiff's state law negligence claim against defendant Picknell. Picknell did not raise his own motion to dismiss for plaintiff's failure to comply with Wisconsin's notice-of-claim provision for municipal officials, so I will not dismiss the negligence claim on that basis. But I will dismiss it because all of plaintiff's federal claims have been dismissed.

Pursuant to 28 U.S.C. § 1367, the court may exercise its supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Here, however, having dismissed plaintiff's federal claims, it is "the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); see also 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction."). I conclude that there is no reason to depart from the circuit's general rule in this instance.

F.  **Remaining motions**

Plaintiff filed a motion to take depositions of defendants, Dkt. 56, and the county defendants filed a motion to amend the schedule, Dkt. 61. Because I am dismissing the case, I will deny these motions as moot.

ORDER

IT IS ORDERED that:

1. Plaintiff Matthew Dennis's motion for provision of legal loan funds or use of release account, Dkt. 18, is DENIED without prejudice.

2. Plaintiff's motion for the court's assistance in recruiting him counsel. Dkt. 21, is DENIED without prejudice.

3. Defendant Michael Dittman's motion to dismiss plaintiff's claims against him, Dkt. 11, is GRANTED.

4. Defendants Walworth County and Sheriff Kurt Picknell's motion for summary judgment based on plaintiff's failure to exhaust administrative remedies, Dkt. 43, is GRANTED.

5. Plaintiff's state law claim against defendant Picknell is DISMISSED without prejudice.

6. The parties' remaining motions are DISMISSED as moot.

7. The clerk of court is directed to enter judgment for defendants and close this case.

Entered August 17, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge